UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------------------
                                              :
PABLO SANCHEZ,                                :
                                              :         CASE NO. 1:19-cv-02133
                         Plaintiff,           :
                                              :
              vs.                             :         OPINION & ORDER
                                              :         [Resolving Doc. 32]
MEGAN J. BRENNAN,                             :
                                              :
                         Defendant.           :
                                              :
------------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

          Plaintiff Pablo Sanchez sues the United States Postal Service ("USPS") for alleged
employment race-based discrimination and retaliation under Title VII of the Civil Rights
Act of 1964.[1]

          Defendant USPS now seeks summary judgment and argues that Plaintiff cannot
sustain his discrimination and retaliation claims because he did not suffer an adverse
employment action and cannot prove that he was treated differently than other similarly
situated employees.[2]  Plaintiff opposes.[3]

          For the following reasons, the Court **GRANTS** Defendant's summary judgment
motion.

    I.      Background

          Now-retired Plaintiff worked more than thirty years and mostly in Lorain, Ohio, as
a letter carrier for Defendant Postal Service.[4]

---

[1] Doc. 1; 42 U.S.C. § 2000e.
[2] Doc. 32; Doc. 32-1.
[3] Doc. 33.
[4] Doc. 1 at 2; Doc. 32-1 at 2.

Case No. 1:19-cv-02133
Gwin, J.

The events for this case happened in 2009 and 2010.  In that period, Plaintiff Sanchez contends that Defendant retaliated against him for his previous protected Equal Employment Opportunity ("EEO") activity.

At the time, Plaintiff Sanchez's supervisor had spoken with him about his tendency to return "a few minutes late" from his shifts.[5]  Mail carriers were supposed to call their supervisor by 3:00 p.m. if they were going to be late returning from their shifts.[6] Apparently, supervisors were evaluated on whether the supervisors kept a cap on overtime.[7]

Plaintiff Sanchez filed his first EEO complaint in 2009.[8]  In the February 2009 complaint, Sanchez received a disciplinary warning letter for his late returns, which he contested.[9]  After talks with between the Lorain Postmaster and Plaintiff's union representative, Plaintiff claims he was permitted to take thirty extra minutes to deliver the mail on Tuesdays when there were extra advertisements.[10]  Defendant denies that the parties had an agreement allowing Sanchez, and Sanchez alone, Tuesday overtime.[11]

After this disciplinary action, Plaintiff complains that his supervisors conducted unannounced inspections to ensure he was working in a timely fashion.[12]

---

[5] Doc. 32-1 at 3–4.
[6] *Id.* at 2.
[7] Doc. 35 at 3.
[8] Doc. 32-1 at 6–8.
[9] *Id.*; Doc. 33 at 4–5.
[10] *Id.*; Doc. 33 at 4–5.
[11] Doc. 32-1 at 4.
[12] *Id.* at 5.

Case No. 1:19-cv-02133
Gwin, J.

In his 2009 EEO complaint, Plaintiff contended that the warning letter and focus on his lateness amounted to racial discrimination.  Plaintiff's EEO complaint and a federal lawsuit were dismissed.[13]

Plaintiff filed his second EEO complaint in 2010 after receiving a second disciplinary warning letter for failing to complete his delivery shift on time and for disobeying a direct supervisor order.[14]

On September 21, 2010, Plaintiff's supervisor directed him to leave half of his Tuesday advertisements and to finish his deliveries on time.  The Lorain Post Office received large numbers of advertising circulars and Sanchez's supervisor told Sanchez to leave one-half of the circulars for delivery the following day.[15]

Instead, Plaintiff took all of his advertisements and returned late.  Plaintiff Sanchez claims he had been given a special thirty-extra-minute arrangement that allowed him extra time.[16]  Plaintiff's second EEO complaint argued that Defendant failed to "honor" the extra-time arrangement and that the second warning letter was retaliation for his earlier EEO complaint.[17]

An administrative law judge held a hearing on Plaintiff's complaint in 2012 and issued a decision in Sanchez's favor in 2019.[18]  This lawsuit followed.[19]  In this lawsuit, Plaintiff alleged discrimination and retaliation from his 2010 warning letter.[20]  Plaintiff now

---

[13] *Id.* at 5–6; Doc. 33 at 6–7.
[14] Doc. 32-1 at 6.
[15] Doc. 35 at 3.
[16] Doc. 32-1 at 6; Doc. 33 at 7–8.
[17] Doc. 32-1 at 6.
[18] *Id.* at 7.  The administrative law judge awarded Sanchez $7,500.  *Id.  See also* Doc. 33 at 8–10.
[19] Doc. 32-1 at 8.
[20] *See* Doc. 1.

Case No. 1:19-cv-02133
Gwin, J.

gives up the discrimination claim but says sufficient evidence supports the retaliation claim.[21]

## II.  Discussion

### a.  Summary Judgment Standard

A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[22]  There is a genuine issue of material fact when the "a reasonable jury could return a verdict for the nonmoving party" based on the evidence.[23]  The Court views all evidence in the light most favorable to the nonmoving party.[24]  The nonmoving party "must show sufficient evidence to create a genuine issue of material fact"[25] as to each of the claim's required elements.[26]  Summary judgment is appropriate "[i]f the evidence is merely colorable . . . or is not significantly probative."[27]

### b.  Plaintiff's Discrimination Claim

In a footnote in Plaintiff's Opposition to Defendant's Summary Judgment motion, Plaintiff states that he does "not disput[e] Defendant's Motion as to Count 1."[28]  Plaintiff does not oppose judgment on his discrimination claim.  The Court grants summary judgment on Plaintiff's discrimination claim.

---

[21] Doc. 33 at 1 n.1.
[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted).
[23] *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[24] *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 500–01 (6th Cir. 2007) (citation omitted).
[25] *Id.* (citation omitted).
[26] *Id.* (noting that a scintilla of evidence is not enough to defeat a summary judgment motion).
[27] *Liberty Lobby, Inc.*, 477 U.S. at 249–50.
[28] Doc. 33 at 1 n.1.

-4-

Case No. 1:19-cv-02133
Gwin, J.

### c. Plaintiff's Retaliation Claim

Plaintiff claims that Defendant retaliated against him in violation of Title VII. Plaintiff claims that Defendant's second 2010 disciplinary warning letter retaliated against Sanchez for Sanchez's first 2009 protected EEO activity.[29]

To establish a prima facie retaliation claim under Title VII, a plaintiff must show: (1) that he engaged in a protected activity; (2) that the defendant knew about the protected activity; (3) that the defendant acted in a way that was "materially adverse" to the plaintiff; and (4) that there is a causal connection between the protected activity and the materially adverse action.[30] For retaliation claims, a plaintiff does not have to suffer an adverse employment action that affects the terms and conditions of employment. Rather, a materially adverse retaliation action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[31]

If a plaintiff makes a prima facie retaliation case, the burden shifts to the defendant to provide a "legitimate, nondiscriminatory reason" for its actions. A plaintiff must then show that the defendant's proffered reason was pretextual.[32]

"In actions properly brought under Title VII, plaintiffs are entitled to a trial *de novo* in which the slate is wiped clean and all questions (including whether the employer actually committed illegal discrimination and what, if any, relief is still owed to the plaintiff) are decided anew by the district court."[33]

---

[29] Doc. 33 at 9–11.
[30] *Rogers v. Henry Ford Health Syst.*, 897 F.3d 763, 775 (6th Cir. 2018).
[31] *Id.* at 776 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).
[32] *Id.* at 777.
[33] *Dellinger v. Potter*, No. 3:08–cv–00219, 2009 WL 2243834, at *5 (S.D. Ohio July 22, 2009) (citing *Chandler v. Roudebush*, 425 U.S. 840, 846–47 (1976); *Scott v. Johanns,* 409 F.3d 466, 469 (D.C. Cir.

Case No. 1:19-cv-02133
Gwin, J.

In the present case, Defendant argues two main issues with Plaintiff's retaliation claim.  First, Defendant contends that Plaintiff's second warning letter was not a sufficiently adverse employment action.[34]  Second, Defendant argues that Plaintiff cannot show a causal link between Plaintiff's first EEO complaint and Defendant's second warning letter.[35]

The Court agrees with Defendant.  Plaintiff does not present a genuine issue of fact to defeat summary judgment in this instance.

First, Plaintiff's letter of warning does not amount to an adverse employment action. Plaintiff's employment did not change because of the warning letter and Plaintiff does not claim any consequences—harmful or otherwise—following the second warning letter.[36]  A Title VII retaliation claim's adverse action standard is less demanding than, for example, the standard for a Title VII discrimination claim.[37]  But even Plaintiff's proffered case law shows that a letter of warning on its own is not an adverse employment action here.  Some other consequence is needed.[38]  Further, the context in each case is important to the

---

2005); and *Abrams v. Johnson, 534 F.2d 1226, 1227 (6th Cir. 1976)).  See also Bent-Crumbley v. Brennan, No. 17-11767, 2019 WL 861116, at *2 (E.D. Mich. Feb. 22, 2019)* (collecting cases).

[34] Doc. 32-1 at 15.

[35] *Id.* at 16.

[36] Doc. 33 at 11–13.

[37] *Rogers, 897 F.3d at 776.*

[38] *See, e.g. Redlin v. Grosse Point Pub. Sch. Sys., 921 F.3d 599, 608, 614 (6th Cir. 2019)* (finding materially adverse actions where Plaintiff's transfer and poor evaluations resulted in less pay, less prestige, and shorter contracts); *Crawford v. JP Morgan Chase & Co., 531 Fed. Appx. 622, 628 (6th Cir. 2013)* (finding an issue of material fact where Plaintiff was transferred to a "lesser" job); *Delia v. Donahoe, 862 F. Supp. 2d 196, 223 (E.D.N.Y. 2012)* (finding that a Postal Service employee's second warning letter was an adverse employment action because it led to his "emergency placement in off-duty status" and "letter of removal"); *Revennaugh v. U.S. Postal Serv., No. 2:16-cv-783, 2019 WL 4674250, at *17 (S.D. Ohio Sept. 25, 2019)* (finding that a Postal Service employee made a prima facie FMLA retaliation claim and finding that she suffered an adverse employment action when she was required to attend a disciplinary hearing while on leave but there was no resulting discipline).

Plaintiff also argues that EEOC guidance supports the argument that a warning letter, without more, constitutes an adverse employment action. But that same guidance also notes, "A fact-driven analysis applies to determine if the challenged employer action(s) in question would be likely to deter participation or opposition. . . . Matters are not actionable as retaliation if they are not likely to dissuade an employee from

Case No. 1:19-cv-02133
Gwin, J.

adverse employment action determination.[39]  Here, the second warning letter did not "dissuade[ Sanchez] from making or supporting a charge of discrimination" to the EEOC.[40] Plaintiff still made a second EEO complaint.

Second, Plaintiff does not show a causal connection between his first EEO complaint and his second  warning letter.

In the 2010 incident, Sanchez's supervisor gave Sanchez specific direction that Sanchez should delay delivering one-half of advertising circulars for one day to avoid any need for overtime.  Although acknowledging that he received this supervisor's order, Sanchez ignored it.[41]

Defendant says Sanchez received the 2010 warning because he violated a direct supervisor order.[42]

In other words, Plaintiff does not provide evidence that Defendant or its employees had a retaliatory motive.  The ALJ assigned to Plaintiff's EEO complaint credited one of Sanchez's supervisors', Ooten's, statement that, when approached about lateness issues, Sanchez was rude and often said something to the effect of "this is harassment and I will be filing an EEO."[43]  To the ALJ, this was a sign that Defendant had Sanchez's past EEO activity in mind when it issued the second warning letter and provided a possibly retaliatory reason for issuing the letter.[44]

---

engaging in protected activity in the circumstances." EEOC Notice No. 915.004, 2016 WL 4688886, at *18 (2016).

[39] *Burlington,* 548 U.S. at 68–69 ("Context matters.").

[40] *Rogers,* 897 F.3d at 776.

[41] Doc. 35 at 3–5.

[42] *Id.* at 5–6.

[43] Doc. 33 at 9; Doc. 33-6 at 44.  Supervisor Ooten also testified that he was unaware of any EEO activity related to Plaintiff Sanchez in October 2010.  Doc. 33-6 at 119.

[44] Doc. 33-6 at 17.

Case No. 1:19-cv-02133
Gwin, J.

The Court is not convinced that this comment or even Defendant's knowledge of Plaintiff's past EEO complaint is enough to show that Defendant sought to deter Plaintiff from future complaints or punish him with the warning letter.  Being aware of Plaintiff's history does not necessarily suggest animus.  Ooten's comment could just as easily be interpreted as saying that Plaintiff was unbelievable because he often threatened to make EEO complaints but did not act.

Moreover, while temporal proximity is a somewhat flexible standard that can be used to infer retaliatory motive,[45] Plaintiff's arguments do not prevail here.  The second warning letter came more than a year after Plaintiff's first EEO complaint and grew from the specific September 21, 2010, incident.[46]  The timing between Plaintiff's protected action and Defendant's alleged retaliation is longer than Sixth Circuit courts usually require to show temporal proximity.[47]

Further, temporal proximity alone is typically not enough to establish retaliation.[48] Even with Ooten's comment that Plaintiff Sanchez often threatened to file an EEO complaint, a second warning letter a year after Plaintiff's first complaint simply does not provide enough evidence to infer retaliation.

As Defendant argues, a reasonable jury would find insufficient relation between the 2009 discrimination charge and the 2010 warning letter.[49]  Plaintiff has not shown that Defendant's reasoning is pretext.

---

[45] See *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 550 (6th Cir. 2008).
[46] Doc. 32-1 at 6–7.
[47] See *Imwalle*, 515 F.3d at 550.
[48] *Id.*  See also *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 650 (6th Cir. 2015).
[49] Doc. 32-1 at 16 (citing *EEOC v. Ford Motor Co.*, 782 F.3d 753, 770 (6th Cir. 2015)).

Case No. 1:19-cv-02133
Gwin, J.

Third, unlike the ALJ, the Court is not persuaded by Plaintiff's evidence that other letter carriers returned late on the same day for which he was given a second warning letter.[50] This does not support a causal connection between Plaintiff's first EEO complaint and Defendant's second warning letter.  The Sixth Circuit requires that comparators be very similarly situated to Plaintiff.[51]   Here, the appropriate comparison is not to other mail carriers who returned late on September 21, 2010.  The proper comparison would be to other late mail carriers who were also specially instructed to leave half of their advertisements and to return on time, but who took all of their advertisements and returned late.

A reasonable jury would not find a causal connection between Sanchez's first EEO complaint and his second warning letter.

III.    Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's summary judgment motion.

IT IS SO ORDERED.

Dated:  April 27, 2021                              s/     *James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE

---

[50] Doc. 33 at 15; Doc. 33-6 at 16.

[51] *See* *Hillman v. Shelby Cty.*, 515 Fed. Appx. 365, 372 (6th Cir. 2013) ("The proper inquiry is whether the other employees are similarly situated in all relevant aspects.") (citing *Jackson v. FedEx Corp. Servs., Inc.,* 518 F.3d 388, 393 (6th Cir. 2008) and *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998)).